

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 31, 2026**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: KANEISHA L. MAGEE                     CASE NO. 19-52426-KMS

        DEBTOR                                               CHAPTER 13

### OPINION AND ORDER ON DEBTOR'S MOTION
### TO DECLARE LIEN SATISFIED (DKT. NO. 51)

**THIS MATTER** is before the Court on the Motion to Declare Lien Satisfied by Debtor Kaniesha L. Magee (Dkt. No. 51); the Response in Opposition by Creditor Exeter Finance LLC (Dkt. No. 53); the Brief in Support of Creditor's Response (Dkt. No. 72); the Debtor's Brief in Response to Opposition (Dkt. No. 73); and the Reply Brief in Support of Creditor's Response, (Dkt. No. 74).[1]

Magee seeks the release of Exeter's lien on a 2017 Nissan Maxima under Federal Rule of Bankruptcy Procedure 5009(d). *See* Dkt. No. 51. She asserts the lien should be released since Exeter's claim has been satisfied under the terms of the confirmed plan. *Id.* Exeter argues that the lien cannot be released because Magee is not eligible for a discharge and did not pay the full amount of the debt under state law. Dkt. Nos. 53, 74. The Court finds that Magee is entitled to release of the lien.

---

[1] Electronic case filing document numbers in this bankruptcy case are designated as "Dkt. No. ___." *See The Bluebook: A Uniform System of Citation* R. B17.1.4, at 27 (Columbia L. Rev. Ass'n et al. eds., 22nd ed. 2025).

## I. JURISDICTION

The Court has jurisdiction over the parties to and the subject matter of this proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (L) and (O).

## II. FACTUAL BACKGROUND

On March 8, 2016, Magee filed a Chapter 7 Bankruptcy. Case No. 16-50400-KMS, Dkt. No. 1. She received a discharge on August 23, 2016. *Id.*, Dkt. No. 26. Approximately three years post-discharge, Magee entered into a retail installment contract with Exeter to finance $24,184.67 at 24% interest for the purchase of a 2017 Nissan Maxima. Dkt. No. 53-1. Several months later, on December 9, 2019, Magee filed a Chapter 13 Bankruptcy. Dkt. No. 1. Because of the timing of the second bankruptcy, Magee was not entitled to a discharge.[2]

On January 17, 2020, Exeter filed a claim for $25,188.80 secured by the Nissan, a 910 vehicle.[3] Cl. 7-1. Magee's confirmed plan proposed to pay Exeter $25,188.80[4] at 6.75% interest,

---

[2] Because Magee received a discharge in a case filed within the four years prior to filing her Chapter 13 bankruptcy, she was not eligible to receive a discharge in this case. *See* 11 U.S.C. § 1328(f)(1).

[3] Under the "hanging paragraph" of § 1325(a), a debtor is not allowed to bifurcate the claim (also known as lien-stripping or cramdown) of a creditor that has a purchase money security interest in a vehicle purchased within 910 days of the bankruptcy filing ["910 vehicle"]. Instead, "the entire claim remains secured, regardless of the value of the collateral," and the debtor must pay the full amount of the claim instead of reducing the claim to the value of the security interest. *Drive Fin. Servs. L.P. v. Jordan* (*In re Jordan*), 521 F.3d 343, 347 (5th Cir. 2008).

[4] Although the confirmed plan states that Exeter will be paid $24,500.00 at 6.75% interest, the language of the plan provides that "the claim amount stated on a [timely filed] proof of claim … controls over any contrary amount listed [in the plan]." Dkt. No. 24 at 4. This provision is included in the form plan because the plan is often filed well before the creditors file their proofs of claim. *Compare, e.g.*, Proposed Plan, Dkt. No. 2 at 3, filed December 9, 2019, *with* Exeter Proof of Claim, Cl. 7-1, filed January 17, 2020. As noted in the Chapter 13 Standing Trustee's Final Report and Account, Exeter was paid the full amount of its claim ($25,188.80) at the Till rate. Dkt. No. 62 at 2.

the Till[5] rate in effect at the time in the bankruptcy courts in Mississippi.[6] Dkt. No. 24. With regard to Exeter, the plan provides "[this claim] will be *paid in full* under the plan with interest at the rate stated below [the Till rate]."[7] *Id.* at 4. (emphasis added). Although Exeter was given notice of the plan and the objection deadline, Exeter did not object to confirmation or to Magee's treatment of Exeter's claim in the plan. Dkt. Nos. 9, 10, 13. The plan was confirmed on February 3, 2020. Dkt. No. 24. On April 15, 2025, the Trustee filed a Notice of Completion of Plan Payments. Dkt. No. 48. Several days later, Magee moved to declare Exeter's lien satisfied. Dkt. No. 51. Exeter objected to the motion. Dkt. No. 53.

### *III. DISCUSSION*

Both parties agree that 11 U.S.C. § 1325(a) governs this dispute, yet they differ on which provision applies. *See* Dkt. Nos. 72, 73. Exeter argues § 1325(a)(5)(B) applies while Magee argues § 1325(a)(5)(A) applies. Dkt. Nos. 72 at 2-4, 73 at 3-4. The relevant language of § 1325(a) is as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>         . . .
>         (5) with respect to each allowed secured claim provided for by the plan—
>                 (A) the holder of such claim has accepted the plan;
>                 (B)(i) the plan provides that—
>                         (I) the holder of such claim retain the lien securing such claim until the earlier of—
>                                 (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>                                 (bb) discharge under section 1328; . . .

---

[5] The Till rate is the "rate of interest needed to be paid to an objecting secured creditor whose claim [is] paid in installments under a Chapter 13 plan." *In re Jordan*, 521 F.3d at 346. It is generally 1-3 % above the prime rate. *Till v. SCS Credit Corp.*, 541 U.S. 465, 480 (2004).

[6] The bankruptcy judges for the Northern and Southern Districts of Mississippi set the Till rate for the entire state by standing order posted on both courts' websites. *See* Standing Order Designating Presumptive 11 U.S.C. § 1325(a)(5)(B) Interest Rate (effective Oct. 1, 2018) available at https://www.mssb.uscourts.gov/standing-orders/bankruptcy-court.

[7] The plan expressly provided: "*Unless otherwise ordered by the court, the interest rate shall be the current Till rate in this District." Dkt. No. 24 at 4.

*or*

    (C) the debtor surrenders the property securing such claim to such holder; . . . .

11 U.S.C. § 1325(a)(5) (emphasis added). So, "[a] debtor has only three options for the treatment of secured debt in a chapter 13 plan: propose a treatment the creditor will accept, cram down the debt over the creditor's objection, or surrender the collateral." *In re House*, No. 16-51076-KMS, 2019 WL 267786, at \*3 (Bankr. S.D. Miss. Jan. 18, 2019). Only one of the requirements of § 1325(a)(5) need be met for confirmation. *Rake v. Wade*, 508 U.S. 464, 469 (1993) *superseded on other grounds by statute*.

It is undisputed that Magee did not surrender the collateral, is not entitled to a discharge and did not pay the contract rate of interest on Exeter's claim as required by nonbankruptcy law. The issue before the Court is whether Exeter accepted the plan and if so, whether payment of the full amount of Exeter's claim at the Till rate requires release of the lien.

### A. Exeter Accepted the Plan.

When Magee filed this case, she listed Exeter in her matrix and proposed to pay Exeter in her plan. Dkt. Nos. 2, 3. Exeter received notice of the bankruptcy, the plan, and the deadlines for filing proofs of claim and objections to plan confirmation.[8] Dkt. Nos. 9, 10, 13. Exeter timely filed its proof of claim in the amount of $25,188.80, the total amount owed on the bankruptcy filing date, but did not object to confirmation.[9] Cl. 7-1. Magee's plan, paying Exeter the amount of its

---

[8] "A party in interest may object to confirmation of the plan." 11 U.S.C. § 1324(a).

[9] A secured creditor has two choices: (1) file a proof of claim and be paid through the plan, or (2) do nothing and rely on its security interest. *See Rushmore Loan Mgmt. Servs. LLC v. Mason* (*In re Mason*), 2017 WL 394344, at \*8 (Bankr. S.D. Miss. Jan. 27, 2017) (citing *In re Kleibrink*, 346 B.R. 734, 747 (Bankr. N.D. Tex. 2006)). Here, Exeter chose to file a proof of claim. *See also* Fed. R. Civ. P. 3002(a) ("[E]very creditor must file a proof of claim . . . for the claim . . . to be allowed. A lien that secures a claim is not void solely because an entity failed to file a proof of claim.").

claim, was confirmed on February 3, 2020. Dkt. No. 24. Ultimately, Magee paid Exeter $25,188.80 plus 6.75% interest over the life of her five-year plan. Dkt. No. 62 at 2. Exeter accepted all plan payments without objection.

"Chapter 13 plans, unlike those under chapter 11, do not give rise to balloting in the way chapter 11 plans do, so chapter 13 plans are presumed to be acceptable to creditors absent objection." *De Boer v. Talsma* (*In re Talsma*), 496 B.R. 828, 836, n.10 (Bankr. N.D. Tex. 2013); *In re Saberioon*, 658 B.R. 432, 447 (Bankr. S.D. Tex. 2024).[10] Stated another way, "when the holder of an allowed secured claim does not object, the court may interpret this silence as acceptance under § 1325(a)(5)(A); under these circumstances, the plan need not meet the requirements set forth in § 1325(a)(5)(B) . . . ." *Wachovia Dealer Servs. v. Jones* (*In re Jones*), 530 F.3d 1284, 1291 (10th Cir. 2008).

And "[a] Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of the debt underlying the lien." *Sun Fin. Co., Inc. v. Howard* (*In re Howard*), 972 F.2d 639, 642 (5th Cir. 1992); *see* 11 U.S.C. § 1322(b)(2). Thus, a Chapter 13 creditor must object to the plan to prevent the effect of such modifications. *In re Howard*, 972 F.2d at 642. Otherwise, the plan will be final as to the non-objecting creditor. *Id.*; *Goodwyn v. Cap. One N.A.* (*In re Goodwyn*), 127 F. Supp. 3d 1367, 1374-75 (M.D. Ga. 2015) ("By failing to object and by receiving payments under the plan that fully paid the principal amount of the debt plus a reasonable interest rate, [creditor] accepted the plan.").

---

[10] *See also In re Esquibel*, No. 21-10804-j13, 2022 WL 607922, at *7 (Bankr. D.N.M. Mar. 1, 2022) ("In chapter 13, under which creditors do not vote on the plan [and no mechanism is specified to expressly accept a plan], creditors are given notice and an opportunity to object to the plan. *See* Fed. R. Bankr. P. 2002(a)(9). If no objections are timely filed, the Court may confirm the plan without further notice and without a hearing. *See* Fed. R. Bankr. P. 3015(f) ('If no objection is timely filed, the court may, [without receiving evidence], determine that the plan has been proposed in good faith and not by any means forbidden by law . . . .').")

By failing to object, Exeter accepted the plan under § 1325(a)(5)(A). So the Court does not consider the requirements of § 1325(a)(5)(B).[11]

### B. Exeter's Debt was Paid in Full under the Confirmed Plan.

According to Exeter's proof of claim, Exeter was owed a total of $25,188.80. Cl. 7-1. This amount included prepetition interest and other charges. *Id.* at 2. Magee's plan did not reduce the amount of the debt. Instead, it only reduced the interest rate to be applied on confirmation.

As noted above, a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . . 11 U.S.C. § 1322(b)(2). "[P]ermissible modifications under this section may include changes to the terms of the contract, such as the amount of the monthly payments, the number and timing of payments, and the interest rate." *In re Crawford*, 532 B.R. 645, 648 (Bankr. D.S.C. 2015).

In the Fifth Circuit, the Till rate applies to payment of a claim secured by a 910 vehicle. *Drive Fin. Servs. L.P. v. Jordan* (*In re Jordan*), 521 F.3d 343, 347 (5th Cir. 2008). As the *Jordan* court noted, "the text of the hanging paragraph only prohibits the application of section 506 lien stripping for certain Chapter 13 secured claims; it makes no mention of the section 1325(a)(5)(B) cram down provision." *Id.* at n.9. In other words, the hanging paragraph simply prevents a claim secured by a 910 vehicle from being bifurcated into a secured and unsecured claim.[12] *Id.* at 347. It

---

[11] In its briefs, Exeter argues the effects of § 1325(a)(5)(B) and ignores its prior consent to the plan terms under § 1325(a)(5)(A), the applicable provision in this case. Dkt. Nos. 72, 74. Had § 1325(a)(5)(B) been applicable, the outcome in this case would likely be different. *See In re Drake*, No. 25-00821-JAW, Dkt. No. 61 (Bankr. S.D. Miss. Feb. 18, 2026) (when creditor objects to confirmation, § 1325(a)(5)(B) prohibits release of lien unless debt is paid in full under state law). Exeter chose not to object to its plan treatment. Objecting now, after Magee has made five years of plan payments and paid Exeter's debt in full under the terms of the confirmed plan is inequitable and is a collateral attack on the confirmed plan to which it agreed.

[12] For example, Exeter's proof of claim values the 2017 Nissan at $17,775.00 but lists the secured amount as $25,188.80, the full amount of the debt owed on the filing date. Cl. 7-1 at 2. Because the vehicle was purchased within 910 days of the bankruptcy filing, Magee must pay the full amount of the claim and may not use § 506 to bifurcate the claim into a secured claim of $17,775.00 and an unsecured claim of $7,413.80.

does not affect the interest rate applied to the secured claim. *Id*. And, since Exeter accepted Magee's plan, "the plan could permanently modify her debt." *Goodwyn*, 127 F. Supp. 3d at 1375; *see also Cap. One Auto Fin. Inc. v. Bolden* (*In re Bolden)*, No. 12-14979, 2013 WL 3897048, at *4 (E.D. Mich. July 29, 2013) (where creditor failed to object to plan, "debtor who is not entitled to a discharge may still permanently modify a loan in a bankruptcy plan.").[13]

"Liens do not survive bankruptcy where the debt is provided for in the plan and paid in full." *Allen v. Green Tree Servicing LLC* (*In re Allen*), 122 F. App'x 96, 97 (5th Cir. 2004) (citing *In re Echevarria*, 212 B.R. 26, 28 (Bankr. D.P.R. 1997)). "In such a situation, it is not so much that the lien is extinguished, but that the underlying debt is paid, such that the lien secures nothing and is therefore discharged."[14] *Rushmore Loan Mgmt. Servs. LLC v. Mason* (*In re Mason*), 2017 WL 394344, at *9 (Bankr. S.D. Miss. Jan. 27, 2017); s*ee Holyfield v. Whitehead*, No. 3:13-CV-00227-DMB, 2014 WL 7739345, at *6 (N.D. Miss. Sept. 5, 2014) (lien extinguished when debt paid) (citing Mississippi law).

Here, Magee's confirmed plan specifically stated that Exeter's claim would be paid in full at the "rate stated below" which was the Till rate. Dkt. No. 24 at 4. Once the plan was confirmed without objection, Exeter's rights arose from the confirmed plan and not just its contract. *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 523-24 (Bankr. S.D. Tex. 2009); 11 U.S.C.

---

[13] Various courts have held that a debtor who is ineligible for discharge may not permanently modify a creditor's right to retain its lien. *See, e.g.*, *Colbourne v. Ocwen (In re Colbourne)*, 550 F. App'x 687, 689 (11th Cir. 2013) (citing *In re Lilly*, 378 B.R. 232, 235 (Bankr. C.D. Ill. 2007) and *In re Jarvis*, 390 B.R. 600, 605-06 (Bankr. C.D. Ill. 2008)). These cases involved objections to confirmation bringing § 1325(a)(5)(B) into play. These courts did not address § 1325(a)(5)(A). There is neither a cramdown nor an objection at issue in this case.

[14] This is not a novel concept. "Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full." Congressional Record Statements (Reform Act of 1978) on 11 U.S.C. § 1325(a)(5), 124 Cong. Rec. H11107 (daily ed. Sept. 28, 1978), S17423 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini).

§ 1327(a) (provisions of confirmed plan bind debtor and creditors). In essence, when Exeter failed to object, the confirmed plan became a new contract between Magee and Exeter. *In re Cano*, 410 B.R. at 524. And Magee complied with the terms of that contract by paying off Exeter's claim in full under the terms of the plan.[15] Since Magee has completed her plan payments, this case is ready to close under 11 U.S.C. § 350(a) ("After an estate is fully administered and the court has discharged the trustee, the court shall close the case").[16]

Federal Rule of Bankruptcy Procedure 5009(d) allows a debtor to "move for an order declaring that the secured claim has been satisfied and the lien has been released under the terms of the confirmed plan." Fed. R. Bankr. P. 5009(d). Exeter received the full amount of its claim without bifurcation or reduction in value under the terms of the confirmed plan. Since the claim was satisfied, the lien is extinguished. Thus, Magee is entitled to release of the lien under Rule 5009(d).[17]

---

[15] "[T]he absence of a discharge is not determinative under the circumstances in this case where the creditor's modified claim has been paid in full." *In re Crawford*, 532 B.R. at 651.

[16] "With closure, no conversion, dismissal, or discharge is necessary." *HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 493 (9th Cir. 2015) (citing *TD Bank v. Davis (In re Davis)*, 716 F.3f 331 (4th Cir. 2013)); *see also In re Okosisi*, 451 B.R. 90, 99-100, n. 10 (Bankr. D. Nev. 2011) (where debtor is ineligible for discharge, some "courts have determined that dismissal is the appropriate outcome upon the completion of plan payments, this is inappropriate because dismissal of a chapter 13 case is only to occur either voluntarily or for cause. 11 U.S.C. § 1307. Because dismissal is addressed in Section 1307, and because the successful completion of all plan payments does not constitute cause for dismissal under subsection (c) of section 1307, it is inappropriate for the case to be dismissed upon the successful completion of all plan payments.").

[17] A contrary ruling would allow a creditor with a claim secured by a 910 vehicle to require, after completion of the five-year payment plan, a substantial additional payment for contract interest before the debtor could obtain a release of lien, which would impact the debtor's ability to keep or to sell the vehicle. Had Exeter objected to confirmation, Magee might have made the decision to abandon the vehicle or pay the contract rate through the plan. Magee relied on Exeter's silence and should not be ambushed with a significant additional cost on plan completion. *See In re Blendheim*, 803 F.3d at 484 (noting harsh result if discharge requirement were imposed to strip lien after debtor paid debt in full under confirmed plan).

*ORDER*

**IT IS HEREBY ORDERED AND ADJUDGED** that Debtor's motion is **GRANTED,** and Exeter's lien is satisfied and released.

*##END OF ORDER##*